

Matthew S. Bowman
*Senior Legal Counsel*

E-mail: *mbowman @
alliancedefendingfreedom.org*

September 27, 2013

**BY ECF**

Clerk of Court
for the Honorable Circuit Judges Kelly, Lucero and Matheson
United States Court of Appeals for the Tenth Circuit
Byron White United States Courthouse
1823 Stout Street
Denver, CO 80257

  Re: *Newland v. Sebelius*, Case No. 12-1380
  *Submitted on the briefs to Judges Kelly, Lucero and Matheson on Sept. 26, 2013*
  **Appellees' Citation of Supplemental Authority Pursuant to Rule 28(j)**

Dear Clerk and Honorable Circuit Judges:

  Pursuant to Fed. R. App. P. 28(j), we inform the Court of the decisions in *Armstrong v. Sebelius*, 2013 WL 5213640 (D. Colo. Sept. 17, 2013), and *Briscoe v. Sebelius*, 2013 WL 4781711 (D. Colo. Sept. 6, 2013). The district judges in *Armstrong* and *Briscoe* granted preliminary injunctions based on the same claim asserted against the Mandate challenged here. With these rulings, all four district court decisions in this circuit have ruled in plaintiffs' favor on all preliminary injunction factors at issue.

  In *Armstrong,* the court held that the balance of harms favored Plaintiffs and that the balance of what might be a "temporary infringement on the government's interest … with what on the face of the stipulated facts is a Hobson's Choice between a continuing infringement of religious freedom or potentially crippling monetary penalties" favored Plaintiffs. 2013 WL 5213640, at *4. The district court added that "[t]here is a general public interest in preserving the status quo" while awaiting final determination of the Mandate. *Id.*

  In *Briscoe*, the district court held that exempting Plaintiffs from the Mandate would "not deal a catastrophic blow to the Government such that the harm an injunction would cause the Government would be greater than the harm suffered by Plaintiffs." 2013 WL 4781711, at *4. The district court further ruled that the injunction was in the public interest, stating that the Religious Freedom Restoration Act protected constitutional rights and that "[i]t is always in the public interest to prevent the violation of a party's constitutional rights." *Id.* at *5.

Coupled with the district court decisions in plaintiffs' favor in the present case and in *Hobby Lobby v. Sebelius*, 2013 WL 3869832 (W.D. Okla. July 19, 2013), all four district judges in the Tenth Circuit confronted with this issue have found in plaintiffs' favor on the factors necessary for issuance of a preliminary injunction. The opinions comprising that consensus are subject to review only under the highly deferential abuse of discretion standard. A true and accurate copy of the orders in *Armstrong* and *Briscoe* are attached as Exhibits "A" and "B," respectively.

Respectfully Submitted,

__*s/ Matthew S. Bowman*_____
Matthew S. Bowman
Alliance Defending Freedom
801 G Street NW, Suite 509
Washington DC, 20001
Tel. (202) 393-8690
Fax. (202) 347-3622
mbowman@alliancedefendingfreedom.org

Counsel for Plaintiffs-Appellees
William Newland, et al.

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2013, an identical electronic copy of the foregoing FRAP 28(j) notice will be uploaded to the Court's CM/ECF system, which will automatically generate and send by electronic mail a Notice of Docket Activity to all registered attorneys participating in the case. Such notice constitutes service on those registered attorneys.

Dated September 27, 2013.

__*s/ Matthew S. Bowman*_____
Matthew S. Bowman

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 13-cv-00563-RBJ

W.L. (BILL) ARMSTRONG;
JEFFREY S. MAY;
WILLIAM L. (WIL) ARMSTRONG III;
JOHN A. MAY;
DOROTHY A. SHANAHAN; and
CHERRY CREEK MORTGAGE CO., INC.,
a Colorado corporation,

       Plaintiffs,

v.

KATHLEEN SEBELIUS, in her official capacity as
Secretary of the United States Department of Health
and Human Services;
SETH D. HARRIS, in his official capacity as Acting
Secretary of the United States Department of Labor,
JACOB J. LEW, in his official capacity as Secretary
of the United States Department of Treasury;
UNITED STATES DEPARTMENT OF HEALTH
AND HUMAN SERVICES;
UNITED STATES DEPARTMENT OF LABOR; and
UNITED STATES DEPARTMENT OF THE TREASURY,

       Defendants.

---

## ORDER

---

The case is before the Court again on plaintiffs' motion for a preliminary injunction.  For

the reasons set forth herein, the Court now grants the motion.

### Facts

Plaintiffs, Cherry Creek Mortgage Co., Inc. and its owners, sued the government to

enjoin application of certain parts of the Patient Protection and Affordable Care Act and the

Health Care and Education Reconciliation Act (collectively the "Affordable Care Act") to them. Specifically, plaintiffs challenge what they call the "HHS Mandate," which requires certain employers, including Cherry Creek, to include coverage for what the plaintiffs consider to be abortion-inducing drugs and devices in the company's group health insurance plan. The gist of the claim is that forcing Cherry Creek to provide such coverage is a substantial burden on the individual owners' right to exercise their anti-abortion beliefs as practicing Evangelical Christians.

Hobby Lobby.

There have been several lawsuits similar to this one filed in various jurisdictions, including at least three in this district. In many if not all of them, plaintiffs sought a preliminary injunction. As of the time of the preliminary injunction hearing in this case the courts, both at the district and circuit level, were split. One of the decisions denying a preliminary injunction was that of Judge Heaton in the Western District of Oklahoma. *Hobby Lobby Stores, Inc. v. Sebelius,* 870 F. Supp. 1278 (W.D. Okla. 2012). Significantly, a two-judge motions panel of the Tenth Circuit then denied plaintiffs' motion for a preliminary injunction pending appeal in that case. *Hobby Lobby Stores, Inc. v. Sebelius,* no. 12-6294, 2012 WL 6930302 (10th Cir. Dec. 20, 2012). The panel concluded: "We do not think there is a substantial likelihood that this court will extend the reach of RFRA[1] to encompass the independent conduct of third parties with whom the plaintiffs have only a commercial relationship." *Id.* at *3.

The Tenth Circuit, however, agreed to hear the matter en banc and set oral argument for May 23, 2013, not quite two weeks after the preliminary injunction hearing in this Court in the present case. The motion panel's conclusion that plaintiffs probably could not establish a substantial likelihood of success, coupled with the fact that the en banc argument was imminent,

---

[1] The Religious Freedom Restoration Act of 1993, 42 U.S.C. §§ 2000bb to bb-4.

were influential factors in this Court's denial of the motion for a preliminary injunction. *See* Transcript, May 10, 2013 [#42] at 89-97. The Court noted, of course, that it would follow the lead of the en banc panel once its decision was announced. *Id.* at 98. Shortly thereafter plaintiffs filed a notice of appeal. [#39].

The en banc panel did come out differently. First, by way of quick review, the party seeking the injunction must show "(1) likelihood of success on the merits; (2) a likely threat of irreparable harm to the movant; (3) the harm alleged by the movant outweighs any harm to the non-moving party; and (4) an injunction is in the public interest." *Hobby Lobby Stores, Inc. v. Sebelius,* No. 2013 WL 3216103, at *8 (10th Cir. June 27, 2013) (en banc). A majority of five judges held that the district court erred in concluding that the plaintiffs had not demonstrated a likelihood of success on their RFRA claim. *Id.* at *1. The same majority of five judges also held that plaintiffs had satisfied the irreparable harm element of the preliminary injunction standard. *Id.* A plurality of four judges also concluded that plaintiffs had satisfied the other two elements (balance of the equities and public interest). The court therefore reversed the district court denial of a preliminary injunction, but because there was not a majority as to the third and fourth prongs of the test, the court remanded the case with instructions that the district court address those factors and then reassess whether to grant or deny the preliminary injunction. *Id.* at **1-2.

On remand, after holding another hearing (apparently limited to briefs and oral argument) Judge Heaton found that the balance of the equities favored the plaintiffs, and that the public interest favored the preservation of the status quo until the issues raised by the plaintiffs could be finally resolved on their merits. Accordingly, the court granted a preliminary injunction restraining the government defendants from "any effort to apply or enforce, as to plaintiffs, the

substantive requirements imposed in 42 U.S.C. § 300gg-13(a)(4).  *Hobby Lobby Stores, Inc. v. Sebelius,* No. CIV-12-1000, 2013 WL 3869832, at *2 (W.D. Okla. July 19, 2013).

<u>Further Proceedings in the Present Case</u>

Shortly after the Tenth Circuit's en banc decision in *Hobby Lobby* was announced plaintiffs asked this Court to reverse its previous denial of the preliminary injunction.  [#48].  The government filed a brief in opposition, arguing that the irreparable harm analysis here is different than that which existed in *Hobby Lobby,* and that in any event, the plaintiffs had not established that the balance of the equities and the public interest factors (which were the subject of the remand in *Hobby Lobby*) favored the entry of a preliminary injunction.  [#49].  That response was filed one day before Judge Heaton issued the injunction on remand.

On August 1, 2013 this Court issued an order asking whether the government continued to oppose a preliminary injunction here and, assuming that it did, posing two questions to both parties: (1) did plaintiffs' pending appeal deprive this Court of jurisdiction to enter the injunction as requested, and (2) if not, is there evidence in the record on which the Court can act without another hearing.  The parties took conflicting positions concerning the Court's jurisdiction to act. However, that is now moot in view of the circuit's resolution of plaintiffs' appeal, discussed below.

With respect to the second question, the parties agreed that another hearing was not only unnecessary but inappropriate.  Plaintiffs' response [#52] at 6; government's response [#51] at 6. The government pointed to certain documents cited in its original brief in opposition to the motion for preliminary injunction, namely, an Institute of Medicine report; the preambles to the July 2010 interim final rules and the February 2012 final rules; and portions of the legislative history of the preventive services coverage provisions.  [#51 at 6].  Those documents, the

government contends, "support the government's position that an injunction is contrary to the public interest because it would interfere with the government's goals of improving the health of women and children and promoting public equality and that an injunction would harm third parties – namely the employees of Cherry Creek." *Id.* The government also cited certain "admissions" in the plaintiffs' complaint.

The plaintiffs took a different tack, and a little background will help. At the beginning of the preliminary injunction hearing, I asked the parties whether the plaintiffs planned on presenting evidence. Plaintiffs' counsel responded that plaintiffs would not be presenting evidence because the parties had stipulated that the facts alleged in plaintiffs' verified complaint may be accepted as true for purposes of preliminary injunction determination. Transcript [#42] at 3. Government counsel agreed. *Id.* at 4. Now, in response to the Court's second question, plaintiffs took the position that their allegations, accepted as true, provided all the information the Court needs to grant the injunction. [#51 at 5-12]. In contrast, plaintiffs argue, the government relies on hearsay and speculation. *Id.* at 5.

The parties then jointly moved in the Tenth Circuit for an order summarily reversing this Court's denial of a preliminary injunction and remanding the case for consideration of the remaining preliminary injunction factors in light of the en banc decision in *Hobby Lobby.* The court agreed, finding that "plaintiff Cherry Creek has established a substantial likelihood of success on the merits of its RFRA claim, and that the district court erred in concluding otherwise." *Armstrong v. Sebelius,* No. 13-1218, 2013 WL 4757949, at *1 (10th Cir. Sept. 5, 2013). The court remanded the case for further proceedings consistent with the *Hobby Lobby* decision. *Id.*

**Conclusions**

This Court denied plaintiffs' motion for a preliminary injunction based on its conclusion that plaintiffs had not established a substantial likelihood of success on the merits.  That conclusion has now been reversed.  The case returns, therefore, for this Court's consideration of the remaining three prongs of the preliminary injunction standard.  As indicated, the parties agree that the Court need not, indeed should not, take further evidence.  Neither party has requested further oral argument, although there has been only a short time since the remand was ordered. In any event, I am satisfied that further argument would not be of material assistance, and therefore I turn to the remaining issues aided by the record already established.

<u>Irreparable Harm</u>

The irreparable harm issue was essentially resolved in plaintiffs' favor by the holding of the five-judge majority on that issue in *Hobby Lobby*.  In its response to the plaintiffs' motion to enter an injunction "forthwith" following the en banc decision, the government attempted to distinguish our case on the basis that plaintiffs waited until three months after the contraceptive coverage requirement took effect before filing this suit and seeking preliminary injunctive relief, and that during that three-month period plaintiffs continued to provide the coverage to which they object.  [#49 at 1].  I am not persuaded.  In the verified complaint [#1], the allegations of which have been stipulated as true for this purpose, plaintiffs allege that after they discovered that Cherry Creek's health insurance plan provided the objectionable coverage to the approximately 400 of its approximately 730 employees who presently participate in the plan, they immediately expressed their religious objections to the insurer.  They received confirmation that, without injunctive relief from a court, the insurer was required by the HHS Mandate to

provide the coverage.  Therefore, Cherry Creek complied with the mandate but began to explore

ways of eliminating the coverage.  *Id.* at ¶¶ 8-11.  This suit was filed on March 5, 2013.  Under

the circumstances, I cannot find that plaintiffs slept on their rights.

The verified complaint alleges, among other things, that being forced to continue to

comply with the mandate "will have a profound and adverse effect on Plaintiffs and how they

negotiate contracts and compensate their employee," *id.* ¶ 98, and "will make it difficult for

Plaintiffs to attract quality employees because of uncertainty about health insurance benefits," *id.*

¶ 99.  They further allege that, if they refuse to provide health insurance to their employees or

omit the objectionable drugs and devices from the coverage, they will be subjected to

enforcement actions and very substantial monetary penalties that could put Cherry Creek out of

business.  *Id.* at ¶¶ 76-81.  Beyond that, in the eyes of the individual plaintiffs, each day that

Cherry Creek is forced to provide the objectionable coverage their sincerely held religious

beliefs are violated.  *Id. passim.*  Accepting all of these allegations as true, the Court concludes

that plaintiffs have met their burden of showing "a likely threat of irreparable harm to the

movant."

Balancing the Harms

The third requirement for a preliminary injunction is that "the harm alleged by the

movant outweighs any harm to the non-moving party."  On remand Judge Heaton found that "the

government's interest in providing Hobby Lobby and Mardel's 13,000 employees with access to

all FDA-approved contraceptive methods, through their employment-based health plans, is not

insignificant." *Hobby Lobby Stores, Inc. v. Sebelius,* 2012 WL 3869832 at *1.  However, he

tempered his assessment by noting that the bulk of the FDA-approved methods of contraception

will still be available to the employees notwithstanding the preliminary injunction (because the

plaintiffs did not object to such methods), unlike other employees who were exempted from the contraceptive-coverage requirement of the Affordable Care Act.  He compared that to the harms, particularly the substantial monetary penalties and violation of religious rights, that were alleged by the plaintiffs.  On balance, "the court finds that the threatened injury to the corporations if the injunction does not issue outweighs the potential harm to the government."  *Id.*

I take it as a given that the fact that the legislation and regulations thereunder were enacted reflects a significant governmental interest.  It is difficult, possibly all but impossible, to compare that interest to the private but not insignificant interest of Cherry Creek and its owners.  Nevertheless, when I attempt to balance what might be a temporary infringement on the government's interest (until the merits are ultimately resolved by the Supreme Court) with what on the face of the stipulated facts is a Hobson's Choice between a continuing infringement of religious freedom or potentially crippling monetary penalties, I join Judge Heaton in concluding that the balance of the harms tips in favor of the plaintiffs for purposes of preliminary injunctive relief.

<u>Public Interest</u>

The question is whether an injunction is in the public interest.  There is, long has been, and probably always will be, division within the public on issues relating to abortion.  The resolution of the legal challenges to the Affordable Care Act such as those presented in this case will not end that division, but those challenges need resolution, and that is why we have courts and the rule of law.  There is a general public interest in preserving the status quo while the legal proceedings take their course.  In that conclusion I again join Judge Heaton.  *See Hobby Lobby,* 2013 WL 3869832 at *1.

There is one irony presented by this case that was not presented in *Hobby Lobby*.  Here, the status quo is that Cherry Creek Mortgage has been and still is providing the coverage to which plaintiffs object.  That being so, the preliminary injunction does not preserve the status quo, which is the stuff of most injunctions, but instead alters it.  The answer is that the status quo would be Cherry Creek's refusing to provide coverage for what they classify as abortifacients had they not unwittingly begun to provide the coverage and then run into an insurmountable roadblock when they directed their insurer to terminate the coverage.  As such, the substance of the order entered here today is to preserve the status quo as it existed before the Affordable Care Act until the merits of the claims can be properly decided.

**Order**

The defendants, their officers and employees are preliminarily enjoined from any further effort to apply or enforce against Cherry Creek Mortgage Co., Inc. or the individual plaintiffs the preventive services requirements found at 42 U.S.C. § 300gg-13(a)(4) or the application of penalties found in 26 U.S.C. § 4980D, 26 U.S.C. § 4980H, and 29 U.S.C. § 1132, pending further order of this Court.

DATED this 17th day of September, 2013.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge

9

# Exhibit B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.   13-cv-00285-WYD-BNB

STEPHEN W. BRISCOE;
CONTINUUM HEALTH PARTNERSHIPS, INC.;
CONTINUUM HEALTH MANAGEMENT, LLC; and,
MOUNTAIN STATES HEALTH PROPERTIES, LLC,

      Plaintiffs,

v.

KATHLEEN SEBELIUS, in her official capacity as Secretary of the United States
      Department of Health and Human Services;
SETH D. HARRIS, in his official capacity as Acting Secretary of the United States
      Department of Labor;
NEAL WOLIN, in his official capacity as Acting Secretary of the United States
      Department of the Treasury;
UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES;
UNITED STATES DEPARTMENT OF LABOR; and,
UNITED STATES DEPARTMENT OF THE TREASURY,

      Defendants.

---

## ORDER

---

THIS MATTER is before the Court on Stephen W. Briscoe, Continuum Health

Partnerships, Inc., Continuum Health Management, LLC, and Mountain States Health

Properties, LLC's ("the Plaintiffs"):  (1) Motion For Preliminary Injunction [ECF No. 15];

(2) Motion For An Order Or, In The Alternative, Request To Set Motion For Preliminary

Injunction For Hearing [ECF No. 34]; (3) Motion For An Order Or, In The Alternative,

Request To Set Plaintiffs' Preliminary Injunction Motion For Hearing and Request For

Forthwith Consideration [ECF No. 39]; (4) Emergency Application For A Temporary

Restraining Order Pending The Court's Ruling On Plaintiffs' Motion For Preliminary

Injunction and Request For Forthwith Consideration [ECF No. 40]; and, (5) Second

Emergency Application For A Temporary Restraining Order Pending The Court's Ruling

On Plaintiffs' Motion For Preliminary Injunction Or, In The Alternative, A Request For A

Preliminary Injunction and Request For Forthwith Consideration [ECF No. 42].

For the reasons stated below, the Plaintiffs':  (1) Motion For Preliminary

Injunction [ECF No. 15] is GRANTED; (2) Second Emergency Application For A

Temporary Restraining Order Pending The Court's Ruling On Plaintiffs' Motion For

Preliminary Injunction Or, In The Alternative, A Request For A Preliminary Injunction

and Request For Forthwith Consideration [ECF No. 42] is GRANTED to the extent the

Plaintiffs seek a preliminary injunction; and, (3) Motion For An Order Or, In The

Alternative, Request To Set Motion For Preliminary Injunction For Hearing [ECF No.

34], Motion For An Order Or, In The Alternative, Request To Set Plaintiffs' Preliminary

Injunction Motion For Hearing and Request For Forthwith Consideration [ECF No. 39],

and, Emergency Application For A Temporary Restraining Order Pending The Court's

Ruling On Plaintiffs' Motion For Preliminary Injunction and Request For Forthwith

Consideration [ECF No. 40] are DENIED AS MOOT.

## BACKGROUND

On February 15, 2013, Stephen W. Briscoe, Continuum Health Partnerships,

Inc., Continuum Health Management, LLC, and Mountain States Health Properties, LLC

(collectively "the Plaintiffs"), filed a Motion For Preliminary Injunction [ECF No. 15],

requesting that I enjoin Kathleen Sebelius, Seth D. Harris, Neil Wolin, the United States

Department of Health and Human Services, the United States Department of Labor, and

the United States Treasury (collectively "the Defendants") from enforcing the Patient

Protection and Affordable Health Care Act ("AHCA"), Pub. L. No. 111-148, 124 Stat.

119 (2010), because it allegedly violates the Plaintiffs' religious rights by forcing them to

provide insurance plans providing free contraceptives, abortifacients, and sterilization

procedures to women.  Specifically, the Plaintiffs argue that the AHCA violates:  (1) the

Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb to bb-4; and, (2) the

Free Exercise, Establishment, and Free Speech Clauses of the First Amendment to the

Constitution of the United States.  Four days later, the Plaintiffs' filed a Motion For

Temporary Restraining Order [ECF No. 16], presenting identical arguments as set forth

in their Motion For Preliminary Injunction [ECF No. 15].

 Briscoe is an Evangelical Christian and owns Continuum Health Partnerships,

Inc., Continuum Health Management, LLC, and Mountain States Health Properties,

LLC.  Briscoe's secular, for-profit companies manage and operate senior care assisted

living centers and skilled nursing facilities.  Briscoe is the sole member and manager of

Continuum Health Management, LLC and Mountain States Health Properties, LLC.

Briscoe is also the lone shareholder of Continuum Health Partnerships, Inc.

 On February 25, 2013, I held a hearing and heard arguments from both parties

regarding the Plaintiffs' Motion For Temporary Restraining Order [ECF No. 16].  On

February 27, 2013, I issued an Order [ECF No. 25] denying the Plaintiffs' Motion For

Temporary Restraining Order [ECF No. 16]. ECF No. 25, p. 17.

 On July 1, 2013, the Plaintiffs filed a Motion For An Order Or, In The Alternative,

Request To Set Plaintiffs' Preliminary Injunction Motion For Hearing and Request For

Forthwith Consideration [ECF No. 39].  In that motion, the Plaintiffs request that I enter

an order granting their Motion For Preliminary Injunction [ECF No. 15] in light of the

United States Court of Appeals for the Tenth Circuit's decision in *Hobby Lobby Stores, Inc. v. Sebelius*, 2013 U.S. App. LEXIS 13316 (10th Cir. June 27, 2013). On July 2, 2013, the Plaintiffs filed an Emergency Application For A Temporary Restraining Order Pending The Court's Ruling On Plaintiffs' Motion For Preliminary Injunction and Request For Forthwith Consideration [ECF No. 40]. In that motion, the Plaintiffs argue that in light of the Tenth Circuit's decision in *Hobby Lobby*, I should enter a temporary restraining order in their favor until I rule on their Motion For Preliminary Injunction [ECF No. 15].

On July 3, 2013, I issued an Order deferring rulings on all pending motions until Judge Heaton of the United States District Court for the Western District of Oklahoma ruled on the preliminary injunction at issue in *Hobby Lobby Stores, Inc. v. Sebelius*, 12-cv-01000-HE (W.D. Okla.) upon remand by the Tenth Circuit. On July 19, 2013, Judge Heaton issued an Order [ECF No. 76 in case no. 12-cv-01000-HE] granting Hobby Lobby's motion for preliminary injunction.

On July 22, 2013, the Plaintiffs filed a Second Emergency Application For A Temporary Restraining Order Pending The Court's Ruling On Plaintiffs' Motion For Preliminary Injunction Or, In The Alternative, A Request For A Preliminary Injunction and Request For Forthwith Consideration [ECF No. 42]. The Plaintiffs argue that in light of the *Hobby Lobby* decision and Judge Heaton's issuance of a preliminary injunction in *Hobby Lobby Stores, Inc. v. Sebelius*, 12-cv-01000-HE (W.D. Okla.), I should either enter a temporary restraining order in their favor until I rule on the Motion For Preliminary Injunction [ECF No. 15], or grant their Motion For Preliminary Injunction [ECF No. 15].

On September 5, 2013, I held a hearing to determine the precise scope of the Plaintiffs' objection to the AHCA's preventative care mandate.  The Plaintiffs' stated that their objection to the AHCA's preventative care mandate is identical to that of the *Hobby Lobby* plaintiffs' objection.  Based on the arguments presented at the hearing and the parties' multiple briefs, I stated on the record that I would grant the Plaintiffs' Motion For Preliminary Injunction [ECF No. 15].  This opinion outlines my reasons for doing so.

## ANALYSIS

### A.  The Patient Protection and Affordable Health Care Act ("AHCA"), Pub. L. No. 111-148, 124 Stat. 119 (2010)

On March 23, 2010, President Barack Obama signed into law the AHCA.  The AHCA contains numerous health care reforms.  Among one of the reforms is a mandate that group health plans must provide no-cost coverage for preventative care and screening for women.  Pursuant to 42 U.S.C. § 300gg-13(a)(4):

> (a) In general. A group health plan and a health insurance issuer offering group or individual health insurance coverage shall, at a minimum provide coverage for and shall not impose any cost sharing requirements for--
>
> *     *     *     *
>
> (4) with respect to women, such additional preventive care and screenings not described in paragraph (1) as provided for in comprehensive guidelines supported by the Health Resources and Services Administration for purposes of this paragraph.

While the AHCA mandates no-cost coverage for preventative care and screening for women, it does not define or establish what constitutes preventative care and screening for women.  The AHCA delegated this responsibility to the Health Resources and Services Administration ("HRSA"). *See* 42 U.S.C. § 300gg-12(a)(4).  On August 1,

2011, the HRSA adopted recommendations from the Institute of Medicine that established the scope of preventative care and screening for women. *See HRSA, Women's Preventative Services: Required Health Plan Coverage Guidelines*, http://www.hrsa.gov/womensguidelines/ (last visited 9/6/13). Pursuant to the HRSA's guidelines, preventative care and screening for women includes "[a]ll Food and Drug Administration approved contraceptive methods, sterilization procedures, and patient education and counseling for all women with reproductive capacity." *Id.* If a group insurance plan fails to provide such care for women, the insurer shall pay a penalty tax of one hundred dollars per day "for each day in the noncompliance period with respect to each individual to whom such failure relates." 26 U.S.C. § 4980D(b)(1). If the Plaintiffs fail to offer employee health insurance altogether, they face significant penalties as well. *See* 26 U.S.C. § 4980H.

There are four exemptions from the AHCA's preventative care mandate.[1] The Plaintiffs do not qualify for any of the exemptions. Thus, they are required by law to provide no-cost preventative care and screening for women as defined by the HRSA.

### B. The *Hobby Lobby* Decision

On June 27, 2013, the Tenth Circuit issued its decision in *Hobby Lobby* regarding a similar challenge to the AHCA as is presented in the case at bar. The case was before the Tenth Circuit on appeal of Judge Heaton's denial of the plaintiffs' motion for a preliminary injunction. Judge Heaton denied the plaintiffs' motion for preliminary injunction finding, *inter alia*, that: (1) Hobby Lobby was not a person under the RFRA and therefore could not bring such a claim; (2) the individual plaintiffs had not

---

[1] For a detailed explanation of the four exemptions, see *Hobby* Lobby, 2013 U.S. App. LEXIS 13316 at 11-14.

established under the RFRA that the AHCA's mandate substantially burdened their

religious exercise; and, (3) in light of those findings, the plaintiffs had not demonstrated

a likelihood of success on their RFRA claim. *Hobby Lobby, Inc. v. Sebelius*, 870 F.

Supp. 2d 1278, *rev'd and remanded en banc*, 2013 U.S. App. LEXIS 13316.  On

appeal, the Tenth Circuit, sitting *en banc*, held that:  (1) Hobby Lobby and Mardel ( a

Christian bookstore) are persons under the RFRA and are entitled to bring RFRA

claims; (2) the plaintiffs demonstrated that the AHCA's mandate substantially burdened

their religious exercise; (3) the plaintiffs established a likelihood of success on their

RFRA claims; and, (4) the plaintiffs established that they would suffer irreparable harm if

an injunction was not issued. *Hobby Lobby*, 2013 U.S. App. LEXIS 133116 at 2.

Because the *en banc* Tenth Circuit did not reach a majority on whether the plaintiffs

satisfied the latter two requirements for issuance of a preliminary injunction *i.e.*, whether

the harm alleged by the movant outweighs any harm to the non-moving party and

whether an injunction is in the public interest, it remanded the case back to Judge

Heaton with instructions to "address the remaining two preliminary injunction factors and

then assess whether to grant or deny the plaintiffs' motion." *Id.* at 81.

**C.  Legal Standard For Issuance of a Preliminary Injunction**

In order to obtain a preliminary injunction, the movant must establish:  "(1) a

substantial likelihood of success on the merits; (2) irreparable harm to the movant if the

injunction is denied; (3) the threatened injury outweighs the harm that the preliminary

injunction may cause the opposing party; and (4) the injunction, if issued, will not

adversely affect the public interest." *GMC v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226

(10th Cir. 2007) (citing *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1255

(10th Cir. 2003)).  Pursuant to the Tenth Circuit's *Hobby Lobby* decision, I need only

analyze the latter two factors. *See* 2013 U.S. App. LEXIS 133116 at 81 (Finding in

Hobby Lobby's favor regarding a substantial likelihood of success on the merits and

irreparable harm, and stating "we . . . remand with instructions that the district court

address the remaining two preliminary injunction factors and then assess whether to

grant or deny the plaintiffs' motion").

### 1. Whether The Threatened Injury Outweighs The Harm That The Preliminary Injunction May Cause The Opposing Party

At the September 5, 2013, hearing, the Plaintiffs stated on record that they face

up to five million dollars in fines, per year, if they choose to offer health insurance that

does not comply with the AHCA's preventative care mandate.  The Plaintiffs further

stated that if they choose not to offer health insurance at all, they face fines in the range

of three to four hundred thousand dollars per year.  The Plaintiffs state that they employ

approximately 200 persons.  If the Government is enjoined from enforcing the AHCA's

preventative care mandate on those 200 persons, the harm caused by such injunction is

outweighed by the punitive fines the Plaintiffs face.  Further, the Government has

exempted a large quantity of persons from the AHCA's preventative care mandate.

While I will not speculate on the exact number of persons exempted, I note that the

Tenth Circuit stated that "the government has already exempted health plans covering

millions of others." *Hobby Lobby*, 2013 U.S. App. LEXIS 133116 at 79.  Exempting

another 200 persons from the AHCA's preventative care mandate will not deal a

catastrophic blow to the Government such that the harm an injunction would cause the

Government would be greater than the harm suffered by the Plaintiffs.

The Food and Drug Administration ("FDA") approved twenty contraceptive methods that fall under the AHCA's preventative care mandate. *Hobby Lobby*, 2013 U.S. App. LEXIS 133116 at 9. The Plaintiffs only object to four of the twenty FDA approved methods: an identical objection to that of the *Hobby Lobby* plaintiffs. *Id.* at 73. The Plaintiffs do not object to providing the other sixteen FDA approved methods. As such, "the government's interest is largely realized while coexisting with [the Plaintiffs'] religious objections." *Id.* at 79.

Therefore, I find that that the threatened injury to the Plaintiffs outweighs the harm an injunction may cause the Government.

### 2. Whether An Injunction Is In The Public Interest

To be clear, the Plaintiffs' rights under the RFRA are statutory. However, the RFRA implicates religious rights recognized by the Constitution of the United States *e.g.*, the Free Exercise Clause. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Hobby Lobby*, 2013 U.S. App. LEXIS 133116 at 80 (citation omitted). Thus, an injunction is in the public interest.

### CONCLUSION

After careful consideration of the matters before this Court, I find that issuance of preliminary injunction is warranted. Accordingly, it is

ORDERED that the Plaintiffs' Motion For Preliminary Injunction [ECF No. 15] is **GRANTED**, and the Defendants, their agents, officers, and employees are **ENJOINED and RESTRAINED from enforcing the AHCA's preventative care mandate on the Plaintiffs only with respect to the four objectionable FDA approved methods**: (1) Ella; (2) Plan B, Plan B One-Step, and Next Choice (Levonorgestrel); (3) the Copper

IUD; and, (4) the IUD with Progestin.  The Defendants, their agents, officers, and employees are **ENJOINED and RESTRAINED from enforcing the AHCA's preventative care mandate as to the four objectionable FDA approved methods and any penalties related thereto until further order by this Court**.  It is

FURTHER ORDERED that the Plaintiffs' Second Emergency Application For A Temporary Restraining Order Pending The Court's Ruling On Plaintiffs' Motion For Preliminary Injunction Or, In The Alternative, A Request For A Preliminary Injunction and Request For Forthwith Consideration [ECF No. 42] is **GRANTED** to the extent the Plaintiffs seek a preliminary injunction, and such injunction is limited in scope as stated in this order.  It is

FURTHER ORDERED that the following motions filed by the Plaintiffs' are **DENIED AS MOOT**:  (1) Motion For An Order Or, In The Alternative, Request To Set Motion For Preliminary Injunction For Hearing [ECF No. 34]; (2) Motion For An Order Or, In The Alternative, Request To Set Plaintiffs' Preliminary Injunction Motion For Hearing and Request For Forthwith Consideration [ECF No. 39]; and, (3) Emergency Application For A Temporary Restraining Order Pending The Court's Ruling On Plaintiffs' Motion For Preliminary Injunction and Request For Forthwith Consideration [ECF No. 40].  It is

FURTHER ORDERED that the Government shall immediately, upon notice, inform the Court whether it seeks to appeal either the Tenth Circuit's *Hobby Lobby* decision and/or Judge Heaton's order issuing a preliminary injunction in *Hobby Lobby Stores, Inc. v. Sebelius*, 12-cv-01000-HE (W.D. Okla.).

Appellate Case: 12-1380    Document: 01019132979    Date Filed: 09/27/2013    Page: 24

Dated:  September 6, 2013.

BY THE COURT:

/s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior U. S. District Judge